Can it please the court, my name is Paul Malachat and I represent the plaintiff's appellant Thomas Guilfoile. I'd ask the Chief Judge for leave to reserve three minutes for rebuttal, please. Yes. Thank you. To state a claim for retaliation under the Fair Claims Act 3730H1 under Carvalis, a plaintiff must plausibly plead three elements. That the plaintiff was engaged in protected conduct, the employer knew that the plaintiff was engaged in protected conduct, and the employer took adverse action because of the protected conduct. Because the plaintiff in this case alleged facts that plausibly alleged each of those elements and was not required to go on to prove additional facts for a claim under 3729, then under Carvalis standard, he plausibly alleged and should have been allowed to continue into discovery with this case. In addition, the district court twice rejected requests for leave to file a second amended complaint, both pre and post judgment, which was either a legal error, a failure to exercise discretion, or an abuse of discretion under this court's decision in WAST. So to get to the heart of the pleading matter in this case, under Carvalis and Booker, it is not a protected activity to simply grumble about regulatory shortcomings, but under Booker specifically, it does state a claim for the employer to resist employer directives that will lead to or in furtherance of false claims. So that includes under Booker internal reporting or other efforts to stop a false claim resisting such directives. Counsel, I wonder if I could ask you to look at, you must have your complaint at hand. I'd like you to look at paragraphs 129 and 132. In those two together, you describe the two business practices that your client took exception to, the alleged kickback scheme and then the false representation about the availability of the 24-7 service. You describe those practices there and then you conclude the paragraph by saying that those practices resulted in the submission of fraudulent claims to the government, and yet you make no attempt in those paragraphs to suggest how those business practices would result in the submission of fraudulent claims to the government. Can you explain what that link is? Are we to infer in some way from that sort of general assertion what those links might be? Right, Your Honor. The paragraphs you read are from the claims for relief, so I may also refer to paragraphs before that. But turning to the anti-kickback statute claim, the false claim is the submission of any claim for services that are obtained through a violation of the anti-kickback statute. That's Section 1320A, 7BG of Title 42. And that's a core violation of the statute. So what we've alleged is that Mr. Green, the consultant, who was a paid consultant both of the hospitals that were the target for the contracts and of the joint ventures, was that he used his knowledge of the hospital's practices to tell the integrated entity how to submit their bids so that they would come in low enough to avoid any competitive bid. That is the anti-kickback violation. That taints any services after that. Let's explore that for a second. Through Mr. Green's effort, the Shields Group establishes a relationship with the hospital, and they'll provide medical, they'll provide medicine to patients at the hospitals, patients who are covered by Medicare or Medicaid. And with the provision of those services, then, claims will be submitted to Medicare or Medicaid to reimburse for the cost of that medicine. Those claims, if those claims are, in fact, submitted for medicine that was provided, the reimbursement that is assigned is not inflated, how are they false claims? Is it your position, because Mr. Green was instrumental in establishing that relationship, those claims are somehow tainted within the meaning of the False Claims Act, even though they're submitted for medicine that was provided? Yes, it is our position. Because Congress met to prevent any competitive activity. That's the very core of the anti-kickback statute. If the services were obtained through an anti-competitive process, one that was obtained through using an inducement, the $35,000 reward payment to Mr. Green, and Mr. Green using his inside knowledge to assist the integrated entity into getting the service, then yes, even if the hospitals innocently provide those claims. And remember, there are allegations both that the integrated entity itself under Section 60, that was Paragraph 67, and that the hospitals under Paragraph 24 were submitting these claims, that each of those claims is tainted by the violation. Is that the provision of the Affordable Care Act that links the anti-kickback statute to the False Claims Act? Yes, the 2009 amendment. To the anti-... Yes, it's interesting. It's in Title 42. You'd think you would find it in the False Claims Act,  and says that, actually you have the language here, a claim that includes items or services resulting from a violation of this section constitutes a false or fraudulent claim under the Act. Now, if I understand, the defendants say you waived this taint argument. I can cite to the places in the record, in the joint appendix, page 217, 222, and 264, the argument was made there. Just so I get it, when you say there was a per se violation, you treat that as making the argument that there was a taint? Yes. Because you also referred to there being patients from those hospitals who would be making claims that would be within the ambit of the False Claims Act. That's correct. So the complaint alleges claims that are being made to government insurance programs, both by the hospitals, induced by... So if I get it right, in some ways the district court may have just misapprehended what you were saying. Is that maybe just a failure to communicate in the sense that when you call it a per se claim... Yes. ...and you're pleading that there are patients from these hospitals who are covered by the False Claims Act, insofar as they make claims that are false... Yes. ...or reimburse you for claims that are false, you're saying that's all what it is when you're saying it's a per se claim? The district court appears to have read you as saying, as long as you show there was a kickback, you thought you would win. Right. That's how I read it, in the sense that there's no link to a claim, but your point is... Right. You sound referencing also the fact that the kickback that led to the hospital coming there had patients who were covered. You're using the per se claim to make the point that every claim that was then filed on one of those persons would be a false claim. Yes, Your Honor. Okay. That each claim that was made under context were obtained through a kickback is a false claim. If it's not waived, and this theory's there, then I guess it turns on, before we get to the amended complaint, whether what you said about the consultant is enough to make that person a person to whom the anti-kickback statute would apply. Right. And on that question, I guess I had... You know, we've got cases that suggest if you're an insider, so you're in a position to make a recommendation in some way. As I read the complaint, can you just show me where in the complaint it's alleging that he had that kind of authority? It alleges he's paid to provide financial advice, but I'm not seeing where the complaint, the unamended complaint, identifies him as being in a position to do what you said, which is advise them financially to come in underbid to avoid competitive bidding. So I guess I would have to refer to paragraphs 65 and 67, which talk about Green's involvement in the process of arranging the contracts. And then, in addition, the defendant... Just so I'm clear, if a person is paid by the company that's seeking to get an arrangement with a hospital, and the person they pay is being paid by the hospital, are you saying that automatically makes it a kickback? Or are you saying the person who's paid by the hospital has to be in some position vis-a-vis the hospital to, I don't know, be more than a finder of the hospital, but influence the hospital's decision-making process? I'm not sure that for the purposes of a retaliation claim under the False Claims Act, I have to go so far as to prove a violation. But at least color-wise, to respond to your question, it was enough that he was able to provide information to Shields and the integrated entity about the business practices of the hospital so that they could avoid a competitive bidding process. And the adjustment for that is, if he landed the contract, he got paid a bounty. So that's the essence of the allegation. Suppose I just hire a finder. But if the finder had an economic relationship with the entity that was getting the contract? I don't know, why does that alone matter? Because you might think what matters is whether the person I'm paying has a relationship with the entity I'm trying to establish the contract with, where they can kind of influence them, because you're then taking advantage of that person, you've got kind of a mole in there, you're paying them to be on two sides of an equation, all those types of things. Whereas instead, I'm just paying somebody who knows I need to find hospitals. I don't know which are the good ones. This guy comes to me and says this is a good one. But there's no evidence that he's doing anything to influence the hospital's choice. Why would that fall within the ambit of the anti-kickback statute? Well, again, bearing in mind that I don't think we have to plead to that level of specificity, and this would be, of course, subject to additional discovery about exactly what his role was at the hospital. At least as a prima facie element, we establish that he seems to have enough inside knowledge about the hospital's bidding process that he's able to tip off the integrated entity about how to avoid competitive bidding. If he were a blank outsider, that would be one thing. So you're not alleging he was in a position to influence the hospital? We have not specifically alleged that. Because the cases we had where we had insiders, that's what the idea was. They were influencing the hospital, not providing information that would be advantage to the one seeking the service. I understand that. Does any authority suggest that having information that would be helpful to the one seeking the service is enough to trigger the anti-kickback statute? I can't identify a specific case, Your Honor, and I see that my time has run out. If I might just ask. Yes, Your Honor. On your 24-7 call center claim, you seem to have a somewhat similar taint theory in the sense that if a contract is won by the representative, if Shields is able to enter into a contract with a hospital boasting of this 24-7 call service, which is not in fact provided, that that somehow taints all subsequent claims for reimbursement arising out of that relationship because of some kind of false representation. I strain to see how that contraction, this representation, can taint all subsequent claims that go to the government out of that Shields-hospital relationship. How does the taint play out there? The theory is that they're overpaying for the services. The false claim is that they are paying for services that the integrated entity knew it would not provide. That's the essence of the claim. Is there any allegation in the unamended complaint that the claim led to higher charges? The claim about the 24-7 call center existing led to higher charges? I don't know that there was a specific allegation in the first amended complaint. Are we supposed to just infer that there must have been a charge? Because absent there being a charge, it's hard to see how it would be material. I think you're right that it's not specifically referred to in the first amended complaint. The false representation about the call center wouldn't be material to any payment that the government would make unless it was reflected in a higher charge, right? So in the absence of an allegation that there was a higher charge, how can you win unless we just are inferring that there must have been, even though it was alleged that there was? The materiality, I guess, as it was in paragraph 82, that it's the sort of service that the hospital would have been particularly interested in having given the critical importance of access 24 hours for service on providing medication. And that would influence their accepting the contract. Just to Judge Lopez's point, unlike with the anti-kickback statute, we have a provision that says every follow-on claim is inherently tainted. That's not true with respect to 24-7 call center misrepresentation. So the only way it would be material is if it resulted in a higher charge for a service that wasn't actually provided, right? Or otherwise had an effect on the government's willingness to pay. Isn't that the materiality test? So if it's not higher charge, what does the complaint allege that would establish materiality? With respect to the government's decision to pay some claims down the road. I couldn't answer as to the government's, but what we've alleged is that the hospital was being induced, even if innocently, into making claims for services that weren't paid. And even the innocent overstatements themselves can be false claims. The hospital, even if it is unaware that they are false, can still be making claims that are false. So you're still tying that to higher charge? Yes, Your Honor. Before you sit down, I just wanted to ask about the leave to amend issue. Yes, Your Honor. So the thing that I just am having trouble puzzling through is, since you made a motion to vacate and that was denied, unlike, I think it's Rost, here it's not as if the district court didn't pass on the leave to amend issue. And it denied it in the face of an argument that there was by the other side saying, you know, it was too much delay on your part. It was denied twice. Pre-judgment in the papers and the motion to dismiss, there was an alternative request for leave to amend with the four-page affidavit. The judge ruled on the motion to allow the additional briefing, but didn't mention the alternative request for leave to amend. Under Rost, that should have been sufficient. But then, unlike in Rost, you then moved to vacate. Then we moved to vacate. So we're taking appeals from both of those decisions, Your Honor. But I'm trying to figure out why that doesn't hurt you. Because one of the logic of Rost, one way to read it, is look, if you have a pending motion out there and a court didn't even rule on it, what else can we do but vacate, unless it's obviously a motion that would be rejected, just to have the district court rule on it. But it seems kind of silly to do that here. When you then move to vacate to the district court, your opponent says to the district court, don't grant it because there was undue delay. The motion to vacate is denied. To send it back now to the district court to say, hey, consider this motion that you just denied in the motion to vacate, seems like a bit of a waste of time. Well, the rule 59, Your Honor, was to put the issue back in front of the district court judge because it was evident she had not ruled on it, which is a perfectly acceptable use of rule 59. No, I'm not saying you did anything wrong. It's just that you got an answer, which is that was then denied. We got a rationale, Your Honor. We have no idea why the judge denied it. We can infer that there was a futility issue, but that's all the inference we know. But you can infer that it was, she thought it was too late, like your opponent said in their briefing on the motion to vacate. Well, in which case I revert back to the original denial of the pre-judgment decision, which was appealed as part of the final judgment, that the judge failed to exercise any discretion, either before or after judgment was uttered. Did you argue that, too, in the motion to vacate? In the motion to vacate, we did not, I don't think we specifically referred back to lost or anything like that. But so how, I mean, so then, as far as the district court knew, you didn't have a problem on that score. That wouldn't affect our ability to appeal the decision from the pre-judgment denial that I conceived. Finally, the Rule 59 motion... Well, it's just that the ground for now appealing it is that I never got an adjudication of it. But unlike in lost, the district court has passed on the question in a sense with respect to the motion to vacate. But only on the question of possibly the undue delay. There was no undue delay when we filed the original request and the affidavit that the judge didn't rule on. So as to that, we don't have any decision. All right. We'll go to the other side. Good morning, and may it please the Court. My name is Brian Lesky. I'm here on behalf of all the defendants' appellees. Our argument here is not that an FCA retaliation plaintiff has to allege the actual submission of a false claim to the government in order to allege protected conduct, like plaintiffs argue. Instead, in order to be eligible or qualify for federal FCA protection, an FCA retaliation plaintiff must plead sufficient facts, all taken as true, to show that his conduct could reasonably lead to an FCA action, which this Court has said is the knowing submission of a false claim to the government. In Carvallis, this Court recognized that the FCA is about government fraud. And while broadly construed, its scope is limited. Although an FCA plaintiff doesn't have to prove a violation of the FCA as an element in an FCA retaliation claim, he still must show, through supported facts and not conclusory allegations, that his conduct concerned the employer's knowing submission of a false claim to the government. Why doesn't the language of the Affordable Care Act with respect to the relationship between the anti-kickback statute and the false claim statute, why doesn't that language lend itself to the Poussey argument that the appellate is making here? Well, I think getting to that question, that does a kickback automatically result in a false claim to the government, something that hasn't been held so far to be the case, is almost getting the cart before the horse. We're not there yet. First, the plaintiff must show, must allege sufficient facts to show that there is an anti-kickback violation to start with. And it's something that the plaintiff... Just to follow on Judge Lopez's line, assume for a second that we think there's enough for that. Assume... Well, obviously our position is that the amended complaint here... Just assume, for purposes of the question Judge Lopez asked you, assume that there's enough evidence that there is an anti-kickback violation. Why then does not the taint argument that the plaintiffs are asserting answer your concern about there having to be some connection to a claim? Well, first, again, we've provided an argument in our brief, too, that they failed to raise that particular argument to the district court, that somehow the taint theory is there. And, indeed, the judge, when she was looking at that, ruled... Assume we don't agree with you on that one as well. Okay. Well, Judge Casper, in this case, ruled that, looking at the text, that standing alone the mere allegation or the mere establishment of an anti-kickback violation isn't enough because you have to show some connection to the future submission of a false claim to the anti-kickback statute violation. So there has to be at least something more than the wholesale theory. Isn't the more that the hospital has covered patients? I don't think it is. Why not? Well, at least in the context of a kickback or a bribe to a physician, for example, who has to refer a medical device or a drug, the courts have consistently held that it's not enough merely to say that there's patients out there. And it's a sliding scope. That's to prove the claim. You have to prove a claim. You said you're not taking a decision that they lose unless they can prove a claim. You have to show a connection to claims. And their contention is that if I just showed a kickback of a hospital that had no covered patients, they'd lose, even though they would have proved a kickback under the AKS. But they say if I can prove that there was a kickback of a hospital that had covered patients, then all the claims that those patients would file would be tainted claims for the reimbursement back, and therefore they've shown the connection between the kickback and the claims to follow, and that should be enough for purposes of the anti-mutilation provision, even though it wouldn't be enough to prove an actual claim that was filed false. I agree with you that if the complaint here alleged, adequately alleged, a kickback violation, with details supporting that at least at the pleading stage, not at the motion for summary judgment stage, that it would be a much different and much more difficult case for a defendant to prevail at summary judgment. But, of course, that's not what we have here. And I think Booker is instructive. Could you then tell me what's wrong with where they're lacking with respect to the proof of the kickback, given that they've shown that they were paying a person who was paid to provide financial advice to the hospital? And that's really the key here, is that the amended complaint allegations, when you look at them and disregard either the proposed second amended complaint that they submitted or the characterization of what their claim is in their briefs, is very limited. Green, the consultant in paragraph 67, is merely alleged to advise hospitals, generally speaking, on their finances, and that's it. There are no allegations that he had any power or authority to refer or recommend any patients or health care business at all, which is really the heart of a kickback. Nor does the amended complaint contain any allegations saying that he played any role in the award of any contract to Shields. There are no allegations that he had any discussions with the hospital. There's no allegations that he advised it or was recommending it. The allegations are he was paid to advise the hospitals on possibly contracting with companies like Shields that provides these pharmaceutical services, and then there is evidence that the payment arrangement with Shields is described in the complaint, and there are further allegations, whether or not, in the pursuit of that scheme, he was getting paid. He was receiving these quarterly payments, suggesting that he was successful, in their view, in helping them establish relationships between hospitals and Shields. Doesn't the complaint contain all of that? It does in some respects, but that is not enough. It's not enough to merely allege that someone is receiving payments and that somehow that satisfies the element that the person is referring or recommending business. Medical device companies pay their salesmen to go in and lobby doctors to promote their drug or to recommend it, and that's never been held to be a kickback. Does the first amended complaint say that Green was paid by any of the hospitals who then established relationships with this pharmaceutical company? All the amended complaint alleges is that he advises on the finances. You said it says he advises hospitals. On their finances. That's different than advising these hospitals. These hospitals or on any particular program. No, it does not. It does not say that he was advising. It does not allege that he was advising these particular hospitals on any of their decisions to award business to Shields. Does it allege that he was being paid by these hospitals? All it says is that he was a consultant for the hospitals. The hospitals. The hospitals, yes. That's paragraph 67 of JA109. So the hospitals are referring to the hospitals that had established a relationship, not hospitals in general. I would have to look up. It's on JA109, paragraph 67. But it's still not enough just to allege. It's better than if it says hospitals. Yeah, it is. And the second point that the plaintiff alleged is that somehow, or at least said here in argument, that the consultant came forward with sensitive hospital information. That's not in the complaint. The only allegation in the complaint is that he provided information to Shields to bid below a certain threshold. There's no allegation in the complaint that that wasn't publicly available, that there wasn't a circular that said, hey, contractors, if it's above a certain level, we're going to put it out for bid, and if it's not, you don't. There's no allegation that he used any of the information that he had from the hospitals to provide that information. It's all speculation. The second amended complaint has more of those allegations, is that right? The second proposed amended complaint submitted post-judgment has more allegations regarding Green. That's correct. And so, why don't we get off this issue and talk about Ross if people have further questions on this. So to get to the second amended complaint, they say Ross suggests that we can look at the second amended complaint or at least vacate. Well, Ross is somewhat of an outlier, I think, in this area of the law. And, you know, I guess you can get to it, you can get to considering the amended complaint either by looking at what we, in our brief call, the second issue regarding the request for leave to amend that he made. And we've been pretty clear to argue that there's a long line of cases in the First Circuit that says the district court does not have to treat a request for leave to amend as a formal motion for leave to amend. And this goes back to G, Silver Strand, Gray, a whole line of cases. How is this case different than Ross? How is this case different than Ross? Well, Ross, the only reason it's, as I said, Ross is somewhat of an outlier. For my purposes, it's outlier as it is, it's blinding on me. So how is it different than Ross? Well, it is. And Judge Lynch, in the opinion of Ross, at the very end said, just simply said that they were going to exercise the appellate jurisdiction to go ahead and remand. But, again, later she offered G, the G case, in which she was, you know, quite clear that a request for leave to amend wasn't. Are you saying there's no difference between this case and Ross, and just that there's later precedent that suggests we shouldn't follow Ross? Are you saying there's a difference between this case and Ross? Well, I don't think Ross sets a binding precedent that this court has to consider a request for leave to amend. Okay. But if you thought it did, you're saying there's no difference between this case and Ross on the facts? No, I don't think that's what I'm saying. Well, what are the differences on the facts? Well, certainly, like you pointed out in the initial argument, you know, the plaintiff here filed motions to vacate the judgment under 57E. The district court had ample opportunity to consider all the factual allegations and all the legal theories that plaintiff was, you know, forwarding in this case. And, ultimately, Judge Casper, in looking at it, decided in some sense that it was a little too late, and that what then Judge Breyer said in James v. Watt, that allowing amendment at this late stage of the game to cure deficiencies identified by the court would undermine the finality of judgment and is not something that's consistent with the federal rules unless there are exceptional circumstances. And, you know, they say that James v. Watt was a summary judgment case, but, again, Judge Lynch and GE relied upon James v. Watt to dismiss at the motion to dismiss stage. And James v. Watt's analysis or force applies equally to this court on appeal in deciding, if it were decided to remand, to allow plaintiff an additional, you know, shot in amending his complaint. It would unsettle the finality of judgments, purely based, frankly, on plaintiff's own neglect in pursuing his case. There's no reason why the second proposed amended complaint couldn't have been filed at the very beginning of this lawsuit. There's no reason why plaintiff had made a request for leave to amend instead of a motion for leave to amend. So everything that's leading up to the motion, the Rule 57e motion at the end, and, indeed, this appeal, frankly, comes from the lack of diligence of counsel in pursuing the case. And I don't think that gives rise to exceptional circumstances, as Chief Judge Howard said in Gray, that would require or it would consider an abuse of discretion not to translate a request for leave into a motion, nor does I think it provide any basis for this appellate court to exercise its appellate jurisdiction, basically concluding that everything Judge Casper did was correct and, on its own, decide to send it back to the district court to accept all these new pleading allegations. Booker recently not only reaffirmed the Carvella standard in the wake of the statutory amendments, but it also made clear that the reason why, in terms of the merits of the pleading standard, the reason why this court insists upon a plaintiff pleading sufficient facts showing the knowing submission of a false claim is the reason that it's only in that circumstance can it ever reasonably lead to a false claim action. And, again, stepping back, looking at what the plaintiff alleged here, he alleged an alleged conflict of interest that potentially violated the anti-kickback statute, which potentially violated the False Claims Act. And he also alleged an alleged breach of a contract regarding the 24-7 call services, which may have resulted in a claim to the government. And if you look at the standard in the circuit, neither one of those concerns the knowing submission of a false claim to the government. It's just not there. And, you know, as an attempt by them to maybe remedy their deficient factual allegations, they argued in the district court that it should adopt a reasonable belief standard. But that's not in the text of the statute, nor is it in the text, nor is it consistent with this circuit's standard. And if I can, I see my time is up. I'm not sure that you've answered my very first question to you, and that is the insistence that the conduct, I'm talking now about what constitutes protected conduct, that the conduct at issue somehow has to sort of reasonably lead to the submission of a specific false claim. We talked about that in Carvelis, and Booker seems to, Booker says Carvelis is still good law, but how do those cases deal with the specific language of the Affordable Care Act, which does seem, at least as a matter of language, to alter that requirement, which may still apply to something like the 24-7 claim, but when we're talking about the anti-kickback statute, arguably, as a matter of language, that insistence that there be that kind of relationship between the conduct and the submission of a false claim no longer applies. Well, I don't think it does. I mean, the language in Carvelis is not that it reasonably could lead to an FCA, the submission of a false claim. It's that it could reasonably lead to a viable FCA action, and I don't think they're necessarily one and the same. A plaintiff should not be, a rate to retaliation plaintiff shouldn't be entitled merely to come in and say that there was a theoretical possibility that a false claim could be submitted that is somehow related to their conduct. That's not what this Court has said all along, as I said, in both Booker and in Carvelis. There's got to be something much more concrete. Some of the other circuits adopt reasonable lease standards and other things like that, but there has to be something much more than the mere theoretical possibility that a false claim could be submitted. Reasonable and theoretical, those are two very different propositions. We do use that language of could reasonably lead to the submission of a specific claim. We do say that in Carvelis. A viable FCA action, not the reasonable submission of a false claim, and I think there's a difference there. The language in Carvelis is that, after considering the other circuit standards, was to say based on Congress's intent and focus on the FCA to focus on government fraud and the knowing submission of false claims, was that the standard in the circuit was going to be that a plaintiff had to show that the employer's knowing submission of a false claim, which is the only way it could reasonably lead to a viable FCA action, and that's on page 269 of Carvelis. So just to be precise, how clear does the allegation of the kickback have to be, in your view? Well, I think it should be viewed like it were, I suppose like it would be reviewing an allegation in the absence of a discussion of the False Claims Act, so that the court would basically come in and say at the motion to dismiss stage. So you have to prove, you have to allege what would be proof of a violation of the AKS? Well, if what the plaintiff is trying to do here is, as I said, kind of string one inference on another, conflict of interest, violation of the kickback, violation of the FCA, then yes, you have to be able to allege the necessary, all the predicate elements of an anti-kickback statute in order to get there. So you don't get the benefit of the more deferential standard or more lax standard of Carvelis with respect to the question of whether there's a kickback. But if you allege there's a kickback and that there's patients from the hospital who would be covered, then you're saying, well, then the Tate, okay, the Affordable Care Act makes that follow night to day, but the linchpin is you have to allege everything sufficient to make an anti-kickback claim in order to get into the retaliation provision. Absolutely. The complaint has to establish, has to show enough facts to actually show an anti-kickback, not prove because we're not at that stage, but prove, but show an anti-kickback statute. And again, it all has to be viewed on this idea that the FCA is about government fraud, not about, and its protections are limited in the sense to employees who are trying to stop fraud in the government. So merely talking about violations of law, regulatory failures, even if they could eventually lead to a false claim are enough. And Carvelis said that. Carvelis said that improper billing practices, which is fraud, is enough. But when the employee came in and said that he was complaining about failure to meet regulatory standards for Medicaid and Medicare reimbursement, which naturally could give rise to a false claim down the road, that wasn't protected conduct. The court has always insisted on government fraud because that's what Congress was intended to protect under the FCA. It's for that reason why we would argue that the district court decision is affirmed. All right. Thank you. Thank you. Thank you. I don't have any time left. You do if you need it. Thank you. I just want to spend a moment addressing Judge Barron's question about the pleading standard. So the Supreme Court in Grand City, page 416, note 1, says, for certain, we don't have to allege false claims act violation. Now, it happens in Carvelis and Booker that there were two claims. There was one for the ketamine claim and then there was a retaliation claim. So it was all there in the complaint. But it doesn't have to be. There has to be enough to show that it could reasonably turn into such a claim. And remember the importance of the amendment to the false claims act that says that in addition to activity about litigation, activity to stop a violation is also considered a claim. If they say to when you have to allege what would be sufficient to make out an anti-kickback claim, presumably you're saying you can allege less than that. We can point to the making of claims, which we did. Just with respect to whether there was an anti-kickback violation, are you agreeing that the complaint has to allege an anti-kickback violation? We have to allege. Or could you allege something that would be a color or looks like, might be? If you squint, it would be an anti-kickback violation. What's the standard you want us to adopt if it's not the standard that you must allege facts sufficient to make out an anti-kickback violation claim? It has to be something that a person sitting in Mr. Guilfoyle's shoes could reasonably perceive as a violation of the anti-kickback statute. And there was enough there. Investigators are making more. But at that standing where he stood, what he saw was a contract that provided payments to somebody who was wearing two hats and conceivably providing information that would help them avoid an anti-competitive process. We've alleged all that, and that was enough for him to act. And since the claim of retaliation, that none of it is that they took adverse action because he protested and didn't want to participate and didn't want to go to court and elevate the issue, was enough to state a claim. Unless, Your Honor, there's any other questions, I thank you, Your Honor, especially for the extra time, and urge that you reverse the decision below. Thank you both.